# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRANCES TAPPS | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | NO. 22-13 |
| v. | * | |
| | * | JUDGE LEMMON |
| RANDOLPH MCCLENDON, in his | * | |
| capacity; JOSEPH P. LOPINTO, III, in his | * | MAGISTRATE JUDGE ROBY |
| official capacity as Sheriff of Jefferson | * | |
| Parish, Louisiana; and HUM | * | |
| MANAGEMENT, LLC, | * | |
| Defendants | * | |
| | * | |

************************************

**FIRST SUPPLEMENTAL AND**
**AMENDING DISCOVERY RESPONSE**

**NOW COMES INTO COURT**, through the undersigned counsel, Randolph McClendon

("McClendon") who responds to the Interrogatories and the First Set of Requests for Production

of Documents propounded by plaintiff, Frances Tapps, as follows:

**ANSWERS TO INTERROGATORIES**

**Interrogatory No. 1:**

DESCRIBE in detail YOUR complete employment history, and for each job or position YOU

IDENTIFY, list (a) the name of YOUR employer; (b) YOUR job title; (c) YOUR annual salary;

(d) the name of YOUR direct manager; (e) the names of any PERSONS who reported directly to

YOU; and (f) the length of YOUR employment.

**Answer to Interrogatory No. 1:**

Plaintiff responds as follows, with the sub-responses running from oldest to most recent:

R&O Pizza
Kitchen helper
Do not recall
Do not recall
Do not recall
None
Approximately 2-3 years

Marshall's Department Store
Clerk
Do not recall
Do not recall
Do not recall
None
Approximately 1-2 years

K-Mart Department Store
Marshall's Department Store
Clerk
Do not recall
Do not recall
Do not recall
None
Approximately 1-2 years

Wal-Mart
Customer Service
Do not recall
Do not recall
Do not recall
None
Approximately 1-2 years

Southern Security & Investigation's
Office worker
Do not recall
Ward McClendon
Do not recall
None
2-3 years

Sav A Center
Customer Service
Do Not Recall
Do Not Recall
Do Not Recall
None

A few months

Stein Mart
Loss Prevention
Do Not Recall
Do Not Recall
Do Not Recall
None
1-2 years

Beatty Chiropractic
Office worker
Do not recall
Sherwood and Elizabeth Beatty
None
1-2 years

Jefferson Parish School System
Substitute Teacher- Account Clerk
Do not recall- Various
Various
None
12 - 13 years

Global Safety & Security
Office worker
Do not recall
Harold Patin
None
2-3 years

Jefferson Parish Sheriff's Office
Process server.  Patrol Deputy
Do not recall-Various
Various
None
2-3 years

Harahan Police Department
Police Officer
Do not recall
Various
None
1-2 years

St Charles Parish Sheriff's Office
Deputy
Do not recall
Various

None
5-6 years

**<u>Supplemental Answer to Interrogatory No. 1:</u>**

Defendant notes that he had a house fire in 2017 which destroyed his personal papers such that much of

what

JPSO

Supervisor was Vincent Bosco

Approximate Salary was $40,000 per year.


Harahan


Supervisor was Chief Mack Dickerson

Approximate Salary was $30-35,000 per year


St. Charles Parish Sheriff's Office

Deputy

Primary Direct Supervisor was Billy Faucheaux

Salary was approximately $36-40,000 per year

**<u>Interrogatory No. 2:</u>**

For each job or position listed in response to Interrogatory No. 1, DESCRIBE in detail the

circumstances surrounding YOUR departure, INCLUDING whether YOU resigned or YOUR

employment was terminated (in which case, state YOUR understanding of the reason for the

termination).

**<u>Answer to Interrogatory No. 2:</u>**

Defendant McClendon responds as follows:

Resigned all except the following:

Wal-Mart Released reduction in work force

Sav-A-Center terminated.. after taking a transfer to new store the new store manager wanted different direction of his team wouldn't accept other position

**Interrogatory No. 3:**

IDENTIFY all services or work that YOU performed for any PERSON other than JPSO from January 2019 until YOU resigned from YOUR position with JPSO.

**Answer to Interrogatory No. 3:**

Defendant McClendon responds as follows:

I do not recall but it would be several business that had details set up thru JPSO Detail office. So those records would be available with JPSO Detail office.

**Supplemental Answer to Interrogatory No. 3:**

On one occasion Siddiqui gave a small amount, believed to be $50, for either a birthday or Christmas present for Defendant's children on only one occasion. This is a clarification from the earlier answer in that it was not money for work performed.

**Interrogatory No. 4:**

DESCRIBE in detail all instances in which YOU were asked by JPSO, HUM MANAGEMENT, or any other PERSON to evict or actually evicted a PERSON from a residential premises, whether through a court process or otherwise.

**Answer to Interrogatory No. 4:**

Defendant McClendon responds as follows:

I NEVER participated in an eviction.  Did go to a location when dispatched by JPSO to assisted the Constable for Safety purposes in an eviction at an apartment complex.   The extent of my responsibility was I stayed in my vehicle and watched people move their stuff to a moving truck and insured everyone safety and peace.

**Interrogatory No. 5:**

DESCRIBE in detail YOUR relationship with HUM MANAGEMENT (INCLUDING the manner in which YOU were introduced to HUM MANAGEMENT) and IDENTIFY all DOCUMENTS and COMMUNICATIONS that support YOUR DESCRIPTION.

**Answer to Interrogatory No. 5:**

Defendant McClendon responds as follows:

No relationship with HUM management their owner Mr. Fiscal is a friend of mine we meet when I went to a call of a vending machine damage at the Comfort Inn where he worked

**Supplemental Answer to Interrogatory No. 5:**

By way of supplementation and clarification, Defendant was a social friend or acquaintance of Mr. Siddiqui Faisal. Later, Defendant learned that he owned HUM Management. Originally, Defendant learned fairly early in the friendship that he owned property, but it was not until the present litigation that Defendant actually knew the name of the company.

**Interrogatory No. 6:**

IDENTIFY any agreement, INCLUDING any oral agreement, between YOU (or an entity affiliated with YOU) and HUM MANAGEMENT and DESCRIBE the terms of any such agreement.

**Answer to Interrogatory No. 6:**

Defendant McClendon responds as follows:

    None

**Interrogatory No. 7:**

DESCRIBE in detail all services or work that YOU performed for HUM MANAGEMENT or its tenants and the dates on which YOU performed any such services or work.

**Answer to Interrogatory No. 7:**

No services were ever performed for HUM management once when hanging out with Mr. Fiscal went with him to help with stuff or see stuff don't recall the dates

**Supplemental Answer to Interrogatory No. 7:**

No services were ever performed for money. On a few occasions Mr. Faisal asked Defendant to perform one small task or another to assist if available. Defendant does not recall any exact dates of the prior incidents, but does recall that it was approximately 5 events in 4 or more years. Defendant recalls that the favors included tasks like looking at plumbing or electrical problems.

**Interrogatory No. 8:**

IDENTIFY all PERSONS with whom YOU discussed HUM MANAGEMENT or the services or work YOU performed for HUM MANAGEMENT, regardless of whether such PERSONS are affiliated with HUM MANAGEMENT.

**Answer to Interrogatory No. 8:**

Defendant McClendon responds as follows:

I never worked for Hum Management I would help Mr. Fiscal with different things when asked

**Interrogatory No. 9:**

IDENTIFY all monetary payments YOU made to or received from HUM MANAGEMENT, INCLUDING the date, sender, recipient, amount, form, and method of each payment.

**Answer to Interrogatory No. 9:**

I never received any money from Hum Management or on behalf of HUM management..  Mr. Fiscal did give me $50 cash once or twice to do things with my kids around their birthdays.

**Supplemental Answer to Interrogatory No. 9:**

By way of clarification, the only funds received from Mr. Faisal were a gift for Defendant's children, around either their birthday or Christmas, and the $50 given was not related to any work, favor, or task performed. Defendant's best recollection is that the gift was not close in time to any work, favor, or task performed, but was purely a social gift. Defendant received no other funds from either Mr. Faisal, HUM Management, or anyone acting on their behalf.

**Interrogatory No. 10:**

DESCRIBE in detail all interactions and COMMUNICATIONS YOU have had with Frances Tapps or any of her family members.

**Answer to Interrogatory No. 10:**

Defendant McClendon responds as follows:

I met Ms. Tapps once when I went to help Mr. Fiscal fix a toilet and check a hot water heater or breaker don't recall which.  I recall Ms. Tapps telling Mr. Fiscal she needed time to catch-up on rent and he said he would work with her. She saw me wearing my police uniform and said I didn't know the police had anything to do with the property. Mr. Fiscal told her I was like a partner . She explained because she had a warrant with Kenner. I told her I don't care about that.

On the day in question I knocked on the screen door and a male answered and said Ms. Tapps wasn't there that she was at her mom's house and I saw a toddler running around. I then left. In order to exit the area I back tracked in front of the apartment and saw Ms. Tapps backing into the driveway and get out of her car and walk to the sidewalk. I rolled down my window and we talked which I later learned she captured on video.

**Interrogatory No. 11:**

DESCRIBE in detail any requests, orders, directives, instructions, or suggestions that YOU received from HUM MANAGEMENT relating to Frances Tapps or any of her family members and IDENTIFY the method by which such requests, orders, directives, instructions, or suggestions were conveyed.

**Answer to Interrogatory No. 11:**

Defendant McClendon responds as follows:

Again, never knew of Hum Management. Mr. Fiscal asked on the day in question if I can go by and pick up her keys... Mr. Fiscal told me that Ms. Tapps stated that she was packing and arrangements were made for him (Mr Fiscal) to get the keys but he said something came up and asked if I would get them for him.

**Supplemental Answer to Interrogatory No. 11:**

Defendant received a text message from Mr. Faisal to get his attention and see if he was available. Defendant then called Mr. Faisal, who requested that Defendant pick up the keys from the plaintiff and told him that plaintiff was going to surrender the keys.

**Interrogatory No. 12:**

IDENTIFY all JPSO systems, programs, software, or databases that YOU accessed or queried in order to obtain information about Frances Tapps or any of her family members and DESCRIBE in detail the nature of YOUR searches (INCLUDING the date(s) of the searches) and the information YOU obtained.

**Answer to Interrogatory No. 12:**

Defendant McClendon responds as follows:

Armms on the day in question and I do not recall if I checked it when I first meet her to see if what she was talking about with Kenner had to be dealt with due to the warrant that she mentioned that revealed she had an Attachment or Warrant for Kenner.

**Interrogatory No. 13:**

IDENTIFY all PERSONS with whom YOU communicated about Frances Tapps or the INCIDENT (INCLUDING any PERSONS affiliated with JPSO), and for each PERSON, IDENTIFY the methods, systems, platforms, and/or tools used to communicate.

**Answer to Interrogatory No. 13:**

Defendant McClendon responds as follows:

Mr  Fiscal, JPSO Internal Affairs, Family, Mr. Fiscal. In person, on the phone and statement via email.

**Supplemental Answer to Interrogatory No. 13:**

Defendant supplements and clarifies his prior response in that he spoke with Mr. Faisal Siddiqui (telephone conversation and possibly one in person conversation), JPSO Sgt. Dave Canas of JPSO

Internal Affairs (in person interview and telephone conversation), and unknown family member(s). Defendant recollects that it is likely that he talked with one or more family members if or when they asked about the published news articles on this matter, but Defendant does not have a detailed recollection of which family members if any. In part, this is due to the fact that Defendant would have simply told family members that he could discuss the matter.

**Interrogatory No. 14:**

DESCRIBE in detail YOUR participation in JPSO's internal investigation of the INCIDENT, INCLUDING the names of PERSONS who interviewed YOU or communicated with YOU about the INCIDENT.

**Answer to Interrogatory No. 14:**

Defendant McClendon responds as follows:

I participated and answered questions of the incident as requested.  I later sent an email statement to close gaps of incident that were not asked to better explain. All communication were with David Canas.

**Interrogatory No. 15:**

DESCRIBE in detail the circumstances leading to YOUR resignation from JPSO and IDENTIFY all DOCUMENTS and COMMUNICATIONS that support YOUR DESCRIPTION.

**Answer to Interrogatory No. 15:**

Defendant McClendon responds as follows:

This interrogatory is unclear because I resigned from JPSO on two separate occasions.

When I left in 2009 I resigned after being suspended and my frustration for a poor investigation that if would have been done completely would have cleared me

In 2021 I left to work as a 1099 contractor for the opportunity to make more money driving trucks

**Supplemental Answer to Interrogatory No. 15:**

Defendant supplements clarifies his prior answer as follows:

When Defendant resigned in 2009 he resigned due to the poorly conducted investigation into the allegations of theft which are the subject of the defamation suit and school board events referred to in the plaintiff's pleadings. Defendant's position, as is obvious from his pursuing a defamation claim, is that he did nothing wrong and that Jefferson Parish, both the school board and the sheriff's office, did not investigate the matter to any reasonable standard of investigation.

When Defendant resigned in 2021 it was over financial issues. During the early stages of the COVID pandemic there were policy changes in JPSO which cut overtime, training pay, and detail opportunities. The result was that Defendant suffered financially, but was made aware of opportunities to make significantly more money as a truck driver. Defendant resigned prior to the conclusion of the JPSO Internal Affairs investigation to make more money. Defendant was told when he informed JPSO of his plan to leave that the investigation was unlikely to result in termination, but Defendant decided to resign anyway because of the financial issues which were actually more immediately pressing to him as a personal concern.

The documents concerning the foregoing are in the possession of JPSO and Defendant does not possess a copy.

**Interrogatory No. 16:**

IDENTIFY and DESCRIBE in detail all COMMUNICATIONS sent or received by YOU CONCERNING Frances Tapps, the INCIDENT, or HUM MANAGEMENT that (a) were not in writing or (b) were in writing but have not been preserved.

**Answer to Interrogatory No. 16:**

Defendant McClendon responds as follows:

I received a phone call from Mr. Fiscal asking if I could do a favor for him. I was told she was packing and moving and was that he was supposed to go pick up her keys. He said something came up and asked if I could go pick them up at first I said I couldn't because I get off work with JPSO at 5:30

pm and had to be at a detail for 6:00 pm... He explained that it should only be a second because she knows he was coming. He then texted me the address and Ms. Tapps' name.

**Supplemental Answer to Interrogatory No. 16:**

Defendant supplements, clarifies, and corrects his prior response in that Defendant recalls that he likely called Mr. Faisal Siddiqui after receiving a text message, but the prior answer is otherwise correct. The prior answer is repeated as follows with punctuation and proofing corrections:

**Interrogatory No. 17:**

IDENTIFY all insurance policies under which YOU have or may have coverage in connection with the INCIDENT or this ACTION.

**Answer to Interrogatory No. 17:**

Defendant McClendon responds as follows:

I have Liberty Mutual Homeowners Insurance , but they have denied coverage. Identifying information concerning the policy is being produced in documentary form with this discovery response.

**Interrogatory No. 18:**

IDENTIFY each PERSON who assisted in the preparation of YOUR answers to these Interrogatories and any other interrogatories served on YOU in connection with this ACTION.

**Answer to Interrogatory No. 18:**

Defendant McClendon responds as follows:

Donald Hyatt, II, counsel for Randolph McClendon

## RESPONSES TO REQUESTS FOR PRODUCTION

**Request for Production No. 1:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any partnership, employment, or other type of relationship or arrangement between YOU and HUM MANAGEMENT.

**Response to Request for Production No. 1:**

Defendant McClendon responds as follows:

I possess no responsive documents.

**Request for Production No. 2:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any attempt by YOU to collect rent

from any PERSON, including Frances Tapps.

**Response to Request for Production No. 2:**

Defendant McClendon responds as follows:

I possess no responsive documents as I never tried to collect rent from Ms. Tapps.

**Request for Production No. 3:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any attempt by YOU to evict (through

a legal process or otherwise) any PERSON from his or her home, including Frances Tapps.

**Response to Request for Production No. 3:**

Defendant McClendon responds as follows:

I possess no responsive documents as I never tried to evict her or anyone else from the home.

**Supplemental Response to Request for Production No. 3:**

Defendant maintains that he reasonably knows what is an eviction, a forced removal pursuan to

court order, as opposed to picking up keys from a tenant he was told was willing to surrender the keys.

In any event, even under the plaintiff's apparent definition, the only responsive document possessed by

defendant is the text message attached hereto, although defendant disputes that it is evidence of an

eviction.

**Request for Production No. 4:**

All DOCUMENTS and COMMUNICATIONS CONCERNING Frances Tapps.

**Response to Request for Production No. 4:**

Defendant McClendon responds as follows:

See attached photo

**Supplemental Response to Request for Production No. 4:**

See documents 31 and 39.

**Request for Production No. 5:**

All DOCUMENTS and COMMUNICATIONS CONCERNING the INCIDENT.

**Response to Request for Production No. 5:**

Defendant McClendon responds as follows:

I do not possess responsive documents. To my knowledge the responsive documents are in the possession of JPSO.

**Supplemental Response to Request for Production No. 5:**

Defendant further responds that the only document he received from JPSO concerning the incident is the GPS map data that is document number 4. This data was transmitted to him with the email that is document number1. All other data and documents are in the possession of JPSO and must be obtained from JPSO.

**Request for Production No. 6:**

All DOCUMENTS and COMMUNICATIONS CONCERNING JPSO's investigation of the INCIDENT, INCLUDING any DOCUMENTS or COMMUNICATIONS prepared by YOU or provided to YOU in connection with the investigation.

**Response to Request for Production No. 6:**

Defendant McClendon responds as follows:

I do not possess responsive documents. To my knowledge the responsive documents are in the possession of JPSO.

**Supplemental Response to Request for Production No. 6:**

As explained in the Supplemental Response to Request for Production No. 5, the only document Defendant possesses which is responsive is the is the GPS map data that is document number 4. This data was transmitted to him with the email that is document number 1. All other data and documents are in the possession of JPSO and must be obtained from JPSO.

**Request for Production No. 7:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any complaints against YOU or internal investigations of YOU while YOU were employed by JPSO.

**Response to Request for Production No. 7:**

Defendant McClendon responds as follows:

I do not possess responsive documents. To my knowledge the responsive documents are in the possession of JPSO.

**Supplemental Response to Request for Production No. 7:**

Defendant further responds that the only document he received from JPSO concerning the incident at issue or any other investigation of Defendant is the GPS map data that is document 4. This data was transmitted to him with the email that is document 1. All other data and documents are in the possession of JPSO and must be obtained from JPSO.

**Request for Production No. 8:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any disciplinary action taken against YOU while you were employed by JPSO.

**Response to Request for Production No. 8:**

Defendant McClendon responds as follows:

I do not possess responsive documents. To my knowledge the responsive documents are in the possession of JPSO.

**Supplemental Response to Request for Production No. 8:**

Defendant further responds that no disciplinary actions were taken so he has no responsive documents.

**Request for Production No. 9:**

All DOCUMENTS and COMMUNICATIONS CONCERNING YOUR resignation from JPSO in 2021.

**Response to Request for Production No. 9:**

Defendant McClendon responds as follows:

I do not possess responsive documents. To my knowledge the responsive documents are in the possession of JPSO.

**Supplemental Response to Request for Production No. 9:**

Defendant further responds that all documentation concerning his resignation is in the possession of JPSO and he does not possess a copy.

**Request for Production No. 10:**

All DOCUMENTS and COMMUNICATIONS CONCERNING YOUR departure from any of the jobs or positions YOU identified in response to Interrogatory No. 1.

**Response to Request for Production No. 10:**

Defendant McClendon responds as follows:

I possess no responsive documents. The various employers listed may have records, although due to the passage of time such records may have been lost or destroyed.

**Supplemental Response to Request for Production No. 10:**

Defendant further responds that in 2017 he had a house fire and his personal records prior to that date were destroyed.

**Request for Production No. 11:**

All agreements YOU identified in response to Interrogatory No. 6.

**Response to Request for Production No. 11:**

Defendant McClendon responds as follows:

I possess no responsive documents.

**Request for Production No. 12:**

All DOCUMENTS CONCERNING any monetary payments YOU identified in response to Interrogatory No. 9.

**Response to Request for Production No. 12:**

Defendant McClendon responds as follows:

    None

**Request for Production No. 13:**

All COMMUNICATIONS YOU identified in response to Interrogatory No. 10.

**Response to Request for Production No. 13:**

Defendant McClendon responds as follows:

    None currently in my possession,because Discovery is on going

    I anticipate information from NOLA.com to include video taped by Ms. Tapps.

**Request for Production No. 14:**

All COMMUNICATIONS YOU identified in response to Interrogatory No. 11.

**Response to Request for Production No. 14:**

Defendant McClendon responds as follows:

    See email of photo re#14

**Supplemental Response to Request for Production No. 14:**

    Defendant further responds that Plaintiff should see documents numbered 31 and 39.

**Request for Production No. 15:**

All DOCUMENTS YOU identified in response to Interrogatory No. 15.

**Response to Request for Production No. 15:**

Defendant McClendon responds as follows:

    None in my possession letter with JPSO

**Supplemental Response to Request for Production No. 15:**

    Defendant further responds that he had a house fire in 2017 and does not have documents prior to that date relative to the 2009 resignation. JPSO has his resignation document from 2021 and possibly from 2009.

**Request for Production No. 16:**

All insurance policies YOU identified in response to Interrogatory No. 17.

**Response to Request for Production No. 16:**

Defendant McClendon responds as follows:

　　　See email re #16

**Supplemental Response to Request for Production No. 16:**

　　　Defendant further responds by referring Plaintiff to documents numbered 11 through 30.

**Request for Production No. 17:**

All COMMUNICATIONS between YOU and any insurance company or representative of an insurance

company CONCERNING coverage for the INCIDENT or this ACTION.

**Response to Request for Production No. 17:**

Defendant McClendon responds as follows:

　　　See several emails listed as # 17

**Supplemental Response to Request for Production No. 17:**

　　　Defendant further responds by referring Plaintiff to documents numbered 5 through 30 and 32

through 38.

**Request for Production No. 18:**

All COMMUNICATIONS YOU sent or received CONCERNING the COMPLAINT or this ACTION,

including COMMUNICATIONS with JPSO or HUM MANAGEMENT.

**Response to Request for Production No. 18:**

Defendant McClendon responds as follows:

　　　None in my possession with JPSO... None at all with HUM

**Request for Production No. 19:**

All DOCUMENTS and COMMUNICATIONS YOU are or will be relying on to support YOUR

defenses in this ACTION, including the affirmative defenses listed in YOUR Affirmative Defenses and

Answer (Dkt. No. 22).

**Response to Request for Production No. 19:**

Defendant McClendon responds as follows:

Discovery and interrogatories are on going I anticipate the following but not limited to the following

1. GPS coordinates and movements of my police vehicle

2. Ms Tapps cell records with GPS coordinates

3. Unknown males cell phone records

4. Kenner police 911 tape

5. Kenner police report, notes, vehicle or body camera recording

6. Ms Tapps medical records

7. Ms Tapps employment records

8. Ms Tapps records of residences

9. Previous complaints filed by Ms Tapps against and law enforcement

10. Ms Tapps complaint with JPSO

11. Ms. Tapps video

12. Ms Tapps statements to Nola.com and other parties

 Other unknown discovery at this time

**Supplemental Response to Request for Production No. 19:**

        Defendant further responds than item 1 (see documents numbered 1 and  4) he does not possess or control any of these documents, but he anticipates obtaining them through discovery and reasonably believes the documents exist and that they will support his defense.

**Request for Production No. 20:**

All DOCUMENTS and COMMUNICATIONS YOU intend to use, rely upon, or introduce in connection with the deposition of Frances Tapps in this ACTION.

**Response to Request for Production No. 20:**

Defendant McClendon responds as follows:

See answer to number 19 above.

**Supplemental Response to Request for Production No. 20:**

Defendant further responds that he may use any of the documents in his possession, including those numbered 1 through 39, all documents produced by any party to this litigation in discovery, and any pleadings or attachments thereto as exhibits to question the plaintiff. Additionally, Defendant has not yet searched for or obtained available news accounts and videos, but Defendant intends to search for same and reserves the right to use any such accounts or video to question plaintiff during deposition.

**Request for Production No. 21:**

All DOCUMENTS and COMMUNICATIONS YOU intend to use, rely upon, or introduce in connection with any deposition (other than the deposition of Frances Tapps), hearing, dispositive motion, or trial in this ACTION.

**Response to Request for Production No. 21:**

Defendant McClendon responds as follows:

See answer to number 19 above.

**Supplemental Response to Request for Production No. 21:**

See the Supplemental Response to Request for Production No. 19 and the Supplemental Response to Request for Production No. 20. Defendant may use any documents identified in either of those responses in connection with depositions other than that of Ms. Tapps.

**Request for Production No. 22:**

All DOCUMENTS and COMMUNICATIONS provided to YOU in relation to this ACTION by any third party (through subpoena, request, agreement, or otherwise).

**Response to Request for Production No. 22:**

Defendant McClendon responds as follows:

See attached email #22

GPS movement of my police vehicle.

**Supplemental Response to Request for Production No. 22:**

Defendant clarifies by directing Plaintiff to documents numbered 1 and 4. Out of an abundance

of caution, Defendant also notes that he was sent the correspondence concerning insurance coverage

which addresses some aspects of the facts being litigated, and those communications are in documents

numbered 5 through 30 and 32 through 38.

Respectfully Submitted,

_____
DONALD L. HYATT, II (24808)
DONALD L. HYATT, II APLC
1217 Florida Street
Mandeville, LA 70448
Telephone: (504) 813-6727
Facsimile: (866) 377-8671
E-Mail: hyattlaw@aol.com
*COUNSEL FOR THE PLAINTIFF,*
*DANIELLE GALANG*

DocuSign Envelope ID: C5AF4A43-1373-4382-B91B-41CAC0E50F87

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been duly served upon all counsel of record _ by hand delivery, _ by facsimile transmission, xxx email transmission, or _ by depositing same in the U.S. MAIL, properly addressed, postage prepaid, this 12th day of July, 2022.

_____

## SWORN DECLARATION OF RANDOLPH MCCLENDON

Pursuant to the provisions of 28 U.S.C. § 1746, I, Randolph McClendon, verify under penalty of perjury under the laws of the United States of America that I have personal knowledge of the following, and it is true and correct to my personal knowledge and belief

I have read the foregoing First Supplemental and Amending Discovery Response, and that the factual responses contained therein are true and correct to the best of her knowledge, information, and belief.

DocuSigned by:

BFBB3133361642C...

_____
RANDOLPH MCCLENDON